IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRIAN C. WOODS, | ) | Case No.  03-22236 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| MELYNDA MORGAN, | ) | Adversary No. 03-2065 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIAN C. WOODS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

Melynda Morgan ("Morgan") filed a complaint seeking a determination that certain debts of Brian

C. Woods ("Debtor") should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(5) on the

grounds that those debts constitute child support and maintenance.  In his answer, Debtor denied that the

debts were for maintenance or support and alleged that they are dischargeable pursuant to 11 U.S.C. §

523(a)(15).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has

jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1).  The following constitutes my Findings

of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as

made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the

reasons set forth below, I find that the debt relating to the children's medical costs is in the nature of support

and is non-dischargeable pursuant to § 523(a)(5). I further find that the debt relating to attorney's fees is

not in the nature of maintenance or support under § 523(a)(5); however, Debtor did not meet his burden

of proof under § 523(a)(15) and the attorney's fees debt is therefore non-dischargeable pursuant to § 523(a)(15).

## I.  FACTUAL BACKGROUND

On August 13, 1999, the Circuit Court of Henry County, Missouri, entered an Amended Judgment Entry (the "Judgment") that dissolved the marriage of Morgan and Debtor[1].  The Judgement ordered, *inter alia*, the following:

1.  Debtor was ordered to pay Morgan on the 15th day of each month, the sum of $832.00 as child support for the four minor children.

2.  The marital residence was to be sold and the net proceeds thereof be split equally between the parties.

3.  Debtor was awarded certain items of marital property and ordered to pay marital debts totaling $24,291.00.

4.  Morgan was awarded certain items of marital property and ordered to pay marital debts totaling $43,305.00, of which $27,000 was for the marital home mortgage only until the home was sold.

5.  Morgan was awarded a judgment in the amount of $1,000.00 against Debtor for a part of Morgan's attorney fees incurred in the divorce proceeding.

6.  Neither party was awarded maintenance.

The Court attached a Parenting Plan to the Judgment as Exhibit A.  The Parenting Plan

_____

[1]  Plaintiff's Ex. 2.

provided that the parties were to have joint legal custody of the children.  Under the heading "Child

Support," the court found that the presumed correct child support was $832.00 per month.

Immediately following, under the heading "Health Insurance," the court ordered the Debtor to maintain

health insurance on the children and pay 70% with Morgan to pay 30% of the costs, expenses or

charges for all medical, dental, orthodontic, endodontic, prescription, optical, psychiatric,

psychological, nursing, counseling and other health care expenses incurred by or on behalf of the

children to the extent that such "medical costs" are actually incurred and are not fully covered or not

fully paid or reimbursed by the health benefit plan.  The parent obtaining the non-covered care was to

provide a bill to the other parent with such bill to be paid within 30 days of receipt.

        In a Modification Judgment Entry entered on May 2, 2001, the court amended the monthly

child support amount to $562.00 per month due to a substantial and continuing change in the

circumstances of the parties.  The court also ordered that Morgan was to maintain the medical and

dental insurance on the children through her employer.  In all other respects, the court's prior orders

and judgments remained in effect.[2]  There was no indication in the modified judgment or at the trial on

this matter of the nature of the change in circumstances or the reason for the modification.

        Morgan submitted evidence that Debtor owed her a total of $2,109.42 for non-covered

medical expenses for their children.  The exhibit she submitted showed that Debtor had made seven

$50 payments leaving a balance owed of $1,759.42.[3]  Debtor was ordered to pay $1,000 of Morgan's

attorney's fees in the divorce decree.  Morgan submitted evidence that Debtor had paid $550 toward

---

[2] Plaintiff's Ex. 3.

[3] Plaintiff's Ex. 4

the attorney's fees and that $450 remained unpaid.[4]  Thus, Morgan contended that Debtor still owed

her a total of $2,209.42 for the non-covered medical costs and attorney's fees.

Debtor testified that his current monthly take-home income is $1,213.10 and his monthly

expenses total $1,775.00.[5]  Debtor also testified that he is currently living with his girlfriend and that she

contributes to and shares certain expenses.

On September 24, 2003, Debtor filed a Chapter 7 bankruptcy petition.  On December 22,

2003, Morgan filed a Complaint to Determine Dischargeability of Debt.  In the Complaint, Morgan

contended that the attorney's fees and medical costs not covered by insurance that Debtor was

ordered to pay her in the divorce proceeding Judgment are non-dischargeable pursuant to § 523(a)(5)

on the grounds that those debts constitute maintenance and child support.  Debtor denied these

allegations and asserted that the debts are in the form of a property settlement and should not be

excepted from discharge.  Debtor also argued that the debts are dischargeable pursuant to §

523(a)(15) because Debtor does not have the ability to pay them.

## II.  DISCUSSION

### A.  11 U.S.C. § 523(a)(5)

11 U.S.C. § 523(a)(5) provides that a debtor is not discharged from any debt-

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for,
or support of such spouse or child, in connection with a separation agreement, divorce

---

[4] Plaintiff's Ex. 5.

[5] Debtor's Ex. A.  Expenses: Rent $500; electricity/gas $185; telephone $60; food $150;
clothing $25; medical and dental expenses $10; laundry and cleaning $20; transportation $100;
recreation, clubs, entertainment $20; auto insurance $85; taxes $5; installment payments to Jeff's
orthodontist $53; child support $562.

decree or other order of a court of record. . ., but not to the extent that- (A) . . .
(B) such debt includes a liability designated as alimony, maintenance, or support, unless
such liability is actually in the nature of alimony, maintenance, or support.

Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law. *See Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir. 1983). A divorce decree's characterization of an award as maintenance or alimony does not bind a bankruptcy court. *Id.* In order to determine whether an award represents a property settlement or a maintenance obligation, a court must look to the function an award was intended to serve. *See Kruger v. Ellis (In re Ellis)*, 149 B.R. 925, 927 (Bankr. E.D. Mo. 1993). The burden of proof under section 523(a)(5) is on the party asserting that the debt is nondischargeable. *Lineberry v. Lineberry (In re Lineberry)*, 9 B.R. 700, 706 (Bankr. W.D. Mo. 1981).

Factors considered by the courts in making this determination include: the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary, the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and, whether it would be difficult for the former spouse and children to subsist without the payments. *In re Tatge*, 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997); *Schurman v. Schurman (In re Schurman)*, 130 B.R. 538, 539 (Bankr. W.D. Mo. 1991) (citing *In re Gianakas*, 917 F.2d 759 (3d Cir. 1990)). Exceptions from discharge for spousal and child support deserve a liberal construction, and the policy underlying § 523 favors the enforcement of familial obligations over a fresh start for the debtor, even if the support obligation is owed directly to a third party. *See Holliday v. Kline (In re Kline),* 65 F.3d 749 (8th Cir. 1995); *Williams v. Kemp (In*

*re Kemp),* 242 B.R. 178, 181 (B.A.P. 8th Cir. 1999), *aff'd* 232 F.3d 652 (8th Cir. 2000).

1. Child Support

The Parenting Plan entered by the Circuit Court provided that Debtor was to pay $832.00[6]

per month for child support pursuant to Mo. Rev. Stat. § 452.340.8.[7]  The Plan went on to order  that

Debtor pay 70% and Morgan pay 30% of the medical costs not covered by the health benefit plan on

behalf of the children.  The procedure established for reimbursement of non-covered medical costs

requires the parent obtaining the non-covered care to provide the other parent a copy of the bill with

the bill to be paid within 30 days of receipt either by paying the medical provider or reimbursing the

other parent.  These provisions for health care cost reimbursement immediately follow the monthly child

support provision in the Parenting Plan.  Morgan testified at the hearing that it was her understanding at

the time of the dissolution that the non-covered medical costs provision was meant to constitute child

support.

The placement of the specific non-covered medical costs provisions immediately following the

child support provision within the Parenting Plan indicates that the payment was intended as child

support.  *See In re Rice*, 94 B.R. 617, 618 (Bankr. W.D. Mo. 1988) (taking into account the

---

[6]The court amended the child support amount to $562.00 in May 2001.

[7]Mo. Rev. Stat. 452.340 contains the relevant factors the state court should consider in
awarding child support: (1) the father's primary responsibility for support of his child; (2) the financial
resources of the child; (3) the financial resources of the custodial parent; (4) the standard of living the
child would have enjoyed had the marriage not been dissolved; (5) the physical and emotional condition
of the child, and his educational needs; and (6) the financial resources and needs of the noncustodial
parent.

placement in the decree of the support provision in determining its function).  The fact that both parents were required to pay a portion of such costs based on their respective incomes also indicates that the payment was intended as child support.[8]  *See Lineberry*, 9 B.R. at 706.  The Court infers, based on the evidence before it, that the Circuit Court was concerned with balancing the income of the parties and with providing for the proper care and support of the four children.  *See Moeder v. Moeder (In re Moeder)*, 220 B.R. 52, 55 (B.A.P. 8th Cir. 1998) (finding divorce court order that ordered debtor to pay monthly child support plus 78% of all unreimbursed medical expenses intended as support).  Debtor asserts that his income is now more limited than at the time of the divorce and that he is no longer able to pay 70% of the children's non-covered medical expenses.  The Debtor's current financial situation is not, however, relevant to the determination under § 523(a)(5).  *See Draper v. Draper*, 790 F.2d 52, 54 (8th Cir. 1986) (court to determine only whether obligation "actually in nature of alimony, maintenance, or support"; statutory language does not contemplate ongoing assessment of need as circumstances change).

Clearly, as other courts have held, medical, dental, orthodontic, endodontic, prescription, optical, psychiatric, psychological, nursing, counseling and other health care expenses are "the necessities and ordinary staples of everyday life."  Thus, the non-covered medical costs constitute support in this case.  *See Spurgeon v. Spurgeon (In re Spurgeon)*, 80 B.R. 477, 479 (W.D. Mo. 1986) (citing *In re Williams*, 703 F.2d 1055, 1057 (8th Cir. 1983) for the proposition that provisions

---

[8]Plaintiff's Ex. 2, Ex. B (child support amount calculation workset indicates that Debtor's proportionate share of the combined adjusted monthly gross income was 71.4%.  Morgan's share was 28.6%).

to pay expenditures for the necessities and ordinary staples of everyday life may reflect a support function).

### 2. Attorney's Fees

An award of attorney's fees in a dissolution proceeding can be non-dischargeable if the court determines that the award was in the nature of support. *See Rump v. Rump (In re Rump)*, 150 B.R. 450, 454 (Bankr. E.D. Mo. 1993). The evidence submitted by Morgan, however, does not demonstrate that the award of attorney's fees was intended as maintenance. Although some courts have found that an award of attorney's fees in a dissolution decree served as maintenance, there is no per se rule to that effect. The courts tend to look at factors such as the disparities in the parties education, training, employment history or earning capacities. *See, e.g., Williams*, 703 F.2d at 1057 (evidence spouse in poor health, had not worked for 8 years, high expenses, little income); *Rump*, 150 B.R. at 453 (evidence attorney's fee award "in lieu of" direct maintenance payment; disparity in income, expenses, education, job skills and training); *Kline*, 65 F.3d at 750 (specific language in divorce decree that circuit court considered the "financial resources of both parties" when awarding attorney's fees and sought to equalize disparity in income).

This Court cannot infer that the fees were intended as support from the placement of the provision in the dissolution decree. There was likewise no specific language contained in the dissolution decree indicating that it was the circuit court's intent that the fees be non-dischargeable. The fact that the circuit court put such language in paragraph 8 of the dissolution decree indicates that the court

would have used similar language for the attorney's fees if that was its intent.[9]  There is also no indication in the dissolution decree that the support awarded to Morgan was otherwise inadequate so that the court was awarding attorney's fees in order to compensate for such inadequacy.

Furthermore, Morgan failed to present any evidence at the trial that she gave up something else at the time of the dissolution in order to be awarded attorney's fees.  There was also no evidence presented regarding the parties' education, training, employment history or future earning capacities which would indicate that the attorney's fees award was made to balance any such disparities between the parties.  The only evidence presented regarding a disparity in the parties income at the time of the dissolution was the child support worksheet which indicated that Debtor earned approximately 70% of the total income while Morgan earned approximately 30% of the total income.  However, there was no further evidence submitted to support Morgan's assertion that the circuit court judge made the attorney's fee award to balance the income disparity.

Therefore, based on the lack of evidence presented by Morgan to establish that the attorney's fee award was intended as support or maintenance, such debt is not excepted from discharge pursuant to § 523(a)(5).  However, the attorney's fee debt may still be excepted from discharge pursuant to 11 U.S.C. § 523(a)(15), as discussed in more detail below.

### B.  11 U.S.C. § 523(a)(15)

Section 523(a)(15) provides:

---

[9]Plaintiff's Ex. 2 ("Husband shall pay to Wife the sum of $578.00 as maintenance in gross. . . This judgment for maintenance is specifically given to secure Husband's faithful and timely payment of the debts and fulfills a support obligation.  This judgment for maintenance in gross shall not be dischargeable in bankruptcy.")

A discharge under section 727. . . does not discharge an individual debtor from any debt

> not of a kind described in paragraph (5) [alimony, maintenance or support] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . unless-
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and , if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business, or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

Section 523(a)(15) is essentially an exception to an exception to discharge. The section creates a rebuttable presumption that debts incurred in the course of a divorce are nondischargeable, subject to two exceptions: the debtor's inability to pay the debt or that the benefit to the debtor of discharging the debt outweighs any detriment to the ex-spouse. *O'Shaughnessy v. O'Shaughnessy (In re O'Shaughnessy)*, 301 B.R. 24, 29 (Bankr. N.D. Iowa 2003). *Lumley v. Lumley (In re Lumley)*, 258 B.R. 433, 436 (Bankr. W.D. Mo. 2001).

Initially, the creditor must establish that a debt is one that falls within the scope of paragraph (15), that it was incurred in the course of a divorce or separation. The burden of proof then shifts to the debtor to establish that the debt is dischargeable because the conditions set forth in either subparagraph (A) or subparagraph (B) exist. *See Fellner v. Fellner (In re Fellner)*, 256 B.R. 898, 902 (B.A.P. 8th Cir. 2001); *Moeder*, 220 B.R. at 56; *Kirchner v. Kirchner (In re Kirchner)*, 206 B.R. 965, 970 (Bankr. W.D. Mo. 1997); *Florio v. Florio (In re Florio)*, 187 B.R. 654, 657 (Bankr. W.D. Mo. 1995); *Lumley*, 258 B.R. at 436. Here, Morgan submitted a copy of the Judgment at the trial which

10

Debtor did not dispute as a judgment that was entered in the course of the parties' divorce.  Therefore,

I find that the creditor has established that the debt was incurred in the course of a divorce, and the

burden of proof thus shifts to Debtor to establish that the debt is dischargeable under § 523(a)(15)(A)

or (B).

The first defense available to a debtor is that the debt is dischargeable because he lacks the

ability to pay the debt from income not reasonably necessary for the support of the debtor or a

dependent of the debtor.  *See* 11 U.S.C. § 523(a)(15)(A).  The inquiry focuses primarily on a

comparison of the debtor's income and expenses and whether the debtor's expenses are reasonably

necessary.  *See In re Jodoin*, 209 B.R. 132 (B.A.P. 9th Cir. 1997).  An inability to pay exists if

excepting the debt from discharge would "reduce a debtor's income to below a level necessary for the

support of the debtor and debtor's dependents."  *Brown v. Brown (In re Brown)*, 302 B.R. 637, 641

(Bankr. N.D. Iowa 2003).  A debtor's present and future circumstances may be examined in

determining disposable income for purposes of § 523(a)(15), and the court's inquiry is not limited to the

debtor's financial strength at any single moment in time.  *See Grunwald v. Beck (In re Beck)*, 298

B.R. 616, 623 (Bankr. W.D. Mo. 2003); *Fureigh v. Haney (In re Haney)*, 238 B.R. 432, 435

(Bankr. E.D. Ark. 1999) ("The appropriate analysis includes a view of the debtor's future financial

situation, including an ability to make minimal monthly payments on the debt, rather than a static view of

the debtor's current ability to pay the debt."); *Johnson v. Rappleye (In re Rappleye)*, 210 B.R. 336,

340 (Bankr. W.D. Mo. 1997) ("Ability to pay under § 523(a)(15) does not necessarily mean at the

time of trial, but requires the Court to consider debtor's future earning capacity."  (*citing Florio*, 187

B.R. at 656-658)).

11

Because the language of § 523(a)(15)(A) is substantially the same as § 1325(b)(2)[10], most courts use the same disposable income test for both sections. *Moeder*, 220 B.R. at 54-55. Thus, in assessing the debtor's ability to pay, the court should determine whether, after paying "reasonably necessary" expenses, the debtor has assets or income sufficient to pay the obligation in question by taking into consideration the debtor's entire economic circumstances. *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997). In determining the extent of the debtor's disposable income, the Court may also consider any income earned by a spouse or live-in companion. *Brown*, 302 B.R. at 642; *In re Eiklenborg*, 286 B.R. 718, 722 (Bankr. N.D. Iowa 2002); *Shea v. Shea (In re Shea)*, 221 B.R. 491, 499-500 (Bankr. D. Minn. 1998) ("When supplemental income from a new spouse or live-in companion serves to alter the debtor's financial prospects, the Court must factor that consideration into its evaluation of [the debtor's] ability to pay" . . . "Absent consideration of a new spouse's income and its debt-absorbing impact upon the family's finances, . . . the Court cannot determine exactly what quantum of the debtor's own income truly is "necessary" for the support of himself and his dependents.")

## 1. Debtor's Ability to Pay

The Court finds that Debtor has not established his inability to pay the Debt. The Debtor failed

---

[10]That section provides:
"[D]isposable income" means income which is received by the debtor and which is not reasonably necessary to be expended-
> (A) for the maintenance or support of the debtor or a dependent of the debtor. . . and
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.
11 U.S.C. § 1325(b)(2).

to give this Court a complete picture of his income and expenses from which to determine whether he has disposable income which could be used to pay the Debt.  Initially, the Debtor attempted to frame the income and expense picture solely in terms of his own income.  Debtor also testified, however, that his live-in girlfriend has an income and in fact does contribute towards some of his monthly expenses. The Court has no evidence as to Debtor's live-in girlfriend's net take-home pay or her gross monthly pay or the specific amount that she contributes toward the monthly expenses.  To the extent any of Debtor's income goes to the support of his live-in girlfriend, it is obviously not for a reasonable and necessary expense for the support of Debtor or one of his dependents.

The evidence with regard to the allocation of joint household expenses is equally incomplete. Debtor's monthly take home pay is $1,213.10.  He testified to monthly expenses which total $1,775.00[11].  Debtor also testified that his live-in girlfriend pays some of the bills and helps him cover expenses, but did not provide evidence as to her income and expenses or the total amount that she contributes to his expenses.  Debtor did testify that the $185 for utilities and $150 for food was attributable to both him and his live-in girlfriend.  Thus, if he and his live-in girlfriend were to divide the utility and food expenses equally, his monthly expenses would be reduced by $167.50 per month.  He also testified that he pays the full $500 per month for rent.  If Debtor and his girlfriend were to split this rent and further reduce his monthly expenses by $250 his total monthly expenses would be reduced to $1,357.50.  That does not take into account the unspecified other expenses Debtor testified his girlfriend also pays each month.  The Court also notes that Debtor could pay off the debt in two years

---

[11]Defendant's Ex. A.

13

by making payments of less than $100 per month.  In the absence of further evidence of the combined

income and expenses of the household, Debtor has failed to meet his burden of proving that he is

unable to pay the debt to his ex-spouse.  *See Eiklenborg*, 286 B.R. at 723 ("Debtor testified that she

and her husband shared the expenses equally.  Schedules I & J, however, do not include debtor's

husband's income and expenses.  As debtor has failed to present evidence necessary to establish a

complete picture of her financial condition, the Court concludes that she has failed to meet her burden

of proof regarding her inability to pay.")

## 2.  Balance of Hardship

The second defense available to a debtor is that the benefits to the debtor of discharging the

debt outweigh the detrimental consequences to the creditor.  *See* 11 U.S.C. § 523(a)(15)(B).  An

assessment of the benefits and detriments under § 523(a)(15)(B) requires an analysis of the totality of

circumstances, not just a comparison of the parties' net worth.  *Florio*, 187 B.R. at 658.   The test

necessitates comparing the lifestyles of both parties and making a determination to measure the benefit

of discharge to the degree of harm.  *Schaefer v. Deppe (In re Deppe)*, 217 B.R. 253, 261 (Bankr. D.

Minn. 1998).

In this case, Debtor did not present any evidence at the trial of Morgan's financial situation or

lifestyle.  There is no evidence of her income, expenses, assets, liabilities, education, health or marital

status.  This does not meet Debtor's burden of proof under § 523(a)(15)(B) as it does not permit the

Court to weigh Morgan's current and likely future financial situation and lifestyle against those of the

Debtor.  The Court finds, therefore, that Debtor failed to establish entitlement to discharge under §

523(a)(15)(B).

14

## III.  CONCLUSION

For all the reasons described above, this Court finds that the non-covered medical expenses Debtor was ordered to pay in the dissolution proceeding were intended to and served the function of child support.  The record does not, however, support a finding that the award of attorney's fees was intended as support.  As to the fees, the Court finds that Debtor has not met his burden of proving that he lacks the ability to pay them or that the balance of hardship favors granting him a discharge of that debt.  It is therefore

ORDERED that the debt for non-covered medical costs be and is hereby excepted from discharge pursuant to 11 U.S.C. § 523(a)(5).  It is further

ORDERED that the attorney's fees debt Debtor was ordered to pay in the dissolution proceeding be and is hereby excepted from discharge pursuant to  11 U.S.C. § 523(a)(15).

SO ORDERED this 12th day of April, 2004.

/s/ Dennis R. Dow

Bankruptcy Judge

Copies to:

William A. Spencer

Gary William Smith

15